### In re KITZEROW.

(District Court, E. D. Wisconsin. April 6, 1918.)

CERTIORARI ⚖=24—SELECTIVE SERVICE ACT—DEFERRED CLASSIFICATION—CERTIORARI TO DRAFT BOARDS.

Certiorari will not issue to review the action of local and district draft boards in making determination as to deferred classification under executive regulations promulgated under the Selective Service Act, for the act creates a system for executive enforcement, and proceedings of the draft boards, as to those within scope of the act, are not in the same category as those of quasi judicial tribunals.

At Law. Petition by George O. Kitzerow for writ of certiorari, to be directed to the Local Board, Division No. 10, of the City of Milwaukee, and District Board No. 1, for the Eastern District of Wisconsin. Application denied.

This is a petition for a writ of certiorari to be directed to local board, division No. 10, of the city of Milwaukee, and district board No. 1, for the Eastern district of Wisconsin, commanding them to certify to this court for its review and determination the case of the petitioner in respect of his disposition as a registrant for military service. The petitioner was required to give notice of application, and the matter has been heard upon the appearance of the petitioner by counsel and the respective boards by the United States attorney.

The petitioner is a natural-born citizen of the United States, of the age of 24 years, resident in Milwaukee, and, being subject to registration for military services, did, on June 5, 1917, register with the proper local registration board. The petition recites the creation of the local and district boards named as respondents, and, after reference to the authority contained in the Selective Service Act (Act May 18, 1917, c. 15, 40 Stat. 76) for the executive promulgation of rules and regulations, as well as the jurisdiction of the several boards authorized to be created, cites from the rules and regulations prescribed the following:

"Sec. 70. *Reason for and Effect of Classification.*—The military needs of the nation require that there be provided in every community a list of names of men who shall be ready to be called into service at any time. The economic needs of the nation, while deferring to the paramount military necessity, require that men whose removal would interfere with the civic, family, industrial, and agricultural institutions of the nation shall be taken in the order in which they best can be spared. For this reason the names of all men liable to selection shall be arranged in five classes, in the inverse order of their importance to the economic interests of the nation, which include the maintenance of necessary industry and agriculture and the support of dependents. The group of registrants within the jurisdiction of each local board is taken as the unit to the classified. Within each class the order of liability is determined by the drawing, which has hitherto assigned to every man an order of availability for military service relative to all men not permanently or temporarily exempted or discharged. The effect of classification in class 1 is to render every man so classified presently liable to military service in the order determined by the national drawing. The effect of classification in class 2 is to grant a temporary discharge from draft, effective until class 1 in the jurisdiction of the same local board is exhausted. The effect of classification in class 3 is to grant a temporary discharge from draft, effective until classes 1 and 2 in the same local board are exhausted; and, similarly, class 4 becomes liable when classes 1, 2, and 3 are exhausted. The effect of classification in class 5 is to grant exemption or discharge from draft. The term 'deferred classification,' as used in these regulations, is equivalent to the term 'temporary discharge.'"

The petition further refers to the authority granted in section 4 of the act

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of Congress for executive exclusion or discharge from the selective draft of all "those in a status with respect to persons dependent upon them for support which renders their exclusion or discharge advisable," and then quotes the following further executive regulation respecting classification in respect of dependency: "Section 4 of the Selective Service Law exempts no person from military service on the ground of dependency. It only authorizes the exclusion or discharge from draft of 'those in a status with respect to persons dependent upon them for support which renders their exclusion or discharge advisable.' The present scheme is designed by the creation of several classes arranged in the order of their availability for military service to defer the induction into the army of registrants upon whom other persons are mainly dependent for support until persons without actual dependents have been called. While an actual dependency must be established before any kind of discharge can be granted, there are certain conditions of dependency which it is advisable to recognize to a fuller extent than others. The present classification is designed to afford the maximum of protection to dependent relatives consistent with the military necessity of the nation. It is to be recognized that war must bring inconvenience and sacrifice to all. No person has a right to refuse to sacrifice luxuries; on the other hand, it is not the intent of the law to deprive the dependents whom the law and regulations are designed to protect of a reasonable adequate support. No definite degree can be given to the meaning of the term 'reasonable adequate support' as used in the classification rules and schedules. The adjustment of these relations must be left to local boards, who have abundantly shown that they will approach each case with sympathy and common sense, and while defending the interests of the nation from selfish and false claimants, on the one hand, will afford the decent protection here designed for meritorious claimants on the other."

Further reference is made to an executive regulation providing that "any registrant who has aged and infirm or invalid parents, * * * mainly dependent upon his labor for support, shall, under the classification rules, be placed in class 3 by the local boards"; that petitioner, obediently to the regulations respecting answer of the "questionnaire," with which we are all familiar, returned and filed his with the respondent local board, division No. 10, wherein, and upon concurring and supporting affidavits required by the rules and regulations, he made due claim for exemption or deferred classification, averring that he should be placed in division B of class 3, and that upon such answers and accompanying affidavits he was entitled to such classification, but that the respondent local board "upon consideration of the answers and affidavits contained in the questionnaire," erroneously classified the petitioner in class 1, division A, as being a single man without dependent relatives, and which classification by said local board is contrary to the proof submitted by him; and that subsequently he took an appeal to the respondent district board, which affirmed the ruling of the local board, whereupon an application was made for rehearing and re-examination of the case, all of which was denied.

The petitioner seeks through this proceeding to review the action of the respective boards, to the end either of obtaining an order directing a change of classification or a reconsideration of his case by the boards upon the proffered testimony.

Lenicheck, Bossel & Wickham, of Milwaukee, Wis., for petitioner.
H. A. Sawyer, U. S. Atty., of Milwaukee, Wis., for the United States.

GEIGER, District Judge (after stating the facts as above). The question is: Should a writ of certiorari issue to draft boards upon facts such as are presented in the present petition? Counsel for the petitioner rests his case wholly upon utterances found in opinions of judges dealing with applications for writs of habeas corpus or for

writs of injunction, seeking to test or to restrain the action of district boards. Thus, in the Angelus Case (C. C. A. 2d Circuit) 246 Fed. 54, 158 C. C. A. 280, Rogers, Circuit Judge, said:

"We do not, however, agree with the statement of the District Judge, heretofore quoted, that there can be no interference of the courts in the action of these boards. We think a decision of the boards is final only where the board has proceeded in due form, and where the party involved is given a fair opportunity to be heard and to present his evidence. But, if an opportunity to be heard should be denied, there can be no doubt as to the right of the aggrieved party to come into the courts for the protection of his rights. And we do not believe that the District Judge meant to say that a decision must be regarded as final under such circumstances. The law courts have a general superintending control by certiorari over all inferior tribunals acting in a judicial or quasi judicial character; and jurisdiction is not entirely taken away by the words of the statute, which declares that the judgment of the inferior tribunal shall be final."

Manifestly, cases dealing with individuals who aver that by reason of the express provisions of the Selective Service Act they are not within, but are left without, the entire scope of the act, as prescribing and imposing liability to military service, are not pertinent. It may readily be conceded that, where the law imposes no obligation upon an individual, the courts must be open to his resistance of any effort to impose its obligations upon him. But the present case deals with an individual whose status is admittedly within the reach of the law. Indeed, he professes his willingness to submit to its obligations, but seeks for the time being to assert a right resting solely upon an executive regulation fixing and establishing conditions or considerations for classifications, and hence order and priority of call. With this as the case, should the courts exercise jurisdiction by certiorari to correct the misapplication of the executive regulations, and to enforce, as the petitioner's right, the regulations as they may be applicable to the facts presented by him in court?

Undoubtedly, Congress, by detailed enactment, or the Executive, with or without detailed regulation, could have imposed the service obligation upon all individuals within the scope of the law, without any attempt to establish order or priority based upon considerations pertaining to the individual or to the service or the needs of the nation. In other words, this power, existing as it did in Congress, might have been exercised and exerted by detailed provisions of the law, or might have been, as it was, delegated practically in its entirety to the Executive. It is my view that the character of the legislation is such that it never was intended, by conferring upon the Executive the full power and discretion to determine the matters which are now comprehended within the executive regulations, to reserve to the individual who is within the scope of the law, as a matter of legal right, subject to be enforced and vindicated in the courts, these very regulations which, in executive discretion, need not have been made at all, or, in like discretion, may be varied from day to day. The draft boards are purely executive agencies, and their error, committed against those who are within the draft law, is executive error in the enforcement of discretionary regulations; and I do not believe that it was or could be the congressional intent that these executive agencies, constituted, as ob-

served, to carry out an unlimited discretion, were or are to be considered in the light of quasi judicial tribunals, discharging functions which pertain to everyday legal rights of a citizen. It would imperil the whole scheme, congressional and executive, in respect of the working of the Selective Service Law; and for these reasons I shall decline to take jurisdiction of the application for the issuance of the writ.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes