### Ex parte McDONALD.

(District Court, E. D. Wisconsin. August 10, 1918.)

1. ARMY AND NAVY ⬤═20—SELECTIVE DRAFT ACT—STATUS OF REGISTRANTS.

Selective Draft Act does not give persons within the draft ages any military status solely by virtue of their being within such ages, but they retain their ordinary status as civilians and citizens until it is changed through the operation of the law by their selection for service.

2. ARMY AND NAVY ⬤═20—SELECTIVE DRAFT ACT—POWERS OF BOARDS.

The courts are bound to respect the determination of local and district draft boards on all matters within their respective jurisdictions, and have no power to revise their decisions, where their jurisdiction has been lawfully exercised; but the courts may determine to what effect the boards have acted.

3. ARMY AND NAVY ⬤═20—SELECTIVE DRAFT ACT—POWERS OF BOARDS.

Both the local and district draft boards, within their respective jurisdictions, retain their power to hear and determine matters pertaining to a registrant until the hour specified in the notice of the local board when he is required to report for service.

4. ARMY AND NAVY ⬤═20—SELECTIVE DRAFT ACT—AUTHORITY OF DISTRICT BOARDS.

Where after notice by a local board to a registrant to report for service, but before the time arrived, he was given deferred classification by the district board on industrial grounds, he could not lawfully be arrested and imprisoned by the local board for failure to report.

Habeas Corpus. Heard as an application for writ of habeas corpus by Bernard J. McDonald. Writ granted.

McGovern, Hannan & Reiss, of Milwaukee, Wis., for petitioner.

H. A. Sawyer, U. S. Atty., George Lines, and J. W. McMillan, all of Milwaukee, Wis., and John B. Sanborn, of Madison, Wis., for respondents.

GEIGER, District Judge. This matter is here upon a petition, the writ, the return upon ancillary writs of certiorari to draft boards, and returns thereto in habeas corpus.

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The writs of certiorari, of course, were issued in discharge merely of the function of bringing up certain records which, it was conceded, might throw some light upon the questions otherwise raised by the petition for the writ of habeas corpus, and do not discharge the office of an original proceeding to inquire into or to correct the doings of the tribunals to whom addressed. The pertinent facts in this case are that the petitioner, a registrant under the selective service law ·(Act May 18, 1917, c. 15, 40 Stat. 76) and within the jurisdiction of one of the local draft boards in the city of Milwaukee, was called for service under the ordinary notice fixing the time to report for military duty. After the giving of that notice, or after the petitioner obtained knowledge of its issuance, he appeared before the district board and made application for deferred classification because of facts within its exclusive jurisdiction to consider. That board granted his application prior to the time when he was required by the notice issued to report for military duty. Notwithstanding that determination, the local board issued an order' for his apprehension, consequent upon which the respondent, Janssen, chief of police of Milwaukee, and Bodenbach, an agent of the federal government, took him into custody and placed him in the county jail for Milwaukee county. He sues out this writ of habeas corpus, claiming that by virtue of the action of the district board he was entitled, at least temporarily, until it was changed by due process under the selective service law, to his freedom.

[1] Whatever other facts have appeared here in the records or statements of counsel showing the successive action taken or attempted to be taken by either of these boards prior to the final action, are of no pertinency in determining the ultimate question in the case. I said a moment ago that the selective service law had a purpose of enabling the raising of an army, and it defines certain persons who are liable to be called. It does not give them any status, as a military status, solely by virtue of their being within certain ages. They retain the ordinary status which they have as civilians and citizens unless and until it is changed through the operation of the law. In other words, the law defines those who are liable to selection, and that, by necessary implication, means that when they are selected as prescribed by the law, they enter the service. Unless and until they are selected, they are not in the service, and enjoy their ordinary civil rights and privileges; and, if this be true, it must be true of those who have never been called, and of those, who, having been called, are not selected, either because of deferment or rejection.

Now, the law is, of course, an exercise of one of the highest of congressional powers—power to compel persons to bear arms in defense of the country; and, in so far as it determines who, for the time being, is liable to be. called for that purpose, it is the exercise of the sovereign congressional authority, which is unimpeachable. As a matter of fact, beyond making the declaration respecting such liability, and those subject thereto, the law contains little except broad administrative provisions, the carrying out of which has been dele-

gated almost wholly to the executive. True, there are guides given to the latter to govern his administration and which, probably, are binding upon him. But be that as it may, the executive has accepted the delegation of power and has proceeded to erect the machinery of the law—familiar to us all. And it consists in the main of the so-called local boards and of the district boards, reserving of course, as by the terms of the law it may be reserved, a superior revisory power in the President himself. Now, the law and the regulations established under this grant of power, define with considerable clearness the jurisdiction of these various tribunals or instrumentalities. The local boards are given a sort of original jurisdiction pertaining to one class of cases. With respect to those cases the district board is created, and it exists, as a revisory or an appellate tribunal for the express purpose of enabling reviews of the determinations of the local boards. The district board is created not only for that purpose, but, under the express terms of the law, there is wholly excluded from the jurisdiction of local boards the entertainment in certain matters, of original jurisdiction, of which, except for the revisory power of the President, is exclusive—those are the cases pertaining to deferment on industrial grounds.

Now, much of this has become familiar to us all in the past year, but it is well to bear in mind, primarily, in considering this case and others that arise, that it was the plain congressional intent, and it is certainly the plain executive intent, to have created under this law *a system* which, being established, certainly exists and must be respected for some purposes. Among such purposes for which the system is established is that of enabling orderly procedure; but there is the other equally great, if not greater, purpose, of enabling *just and effective determinations*. Therefore, being a system involving not only order, it must be held to have contemplated and to be given effect such as, upon the face of things, determinations by boards, either intermediate or final and exclusive, are entitled to receive. It would be absurd to say that a local board, being given original or initial jurisdiction of a certain matter, the determination of an appellate board of matters heard by it, by way of revision or correction, either in point of fact or of law, should be of no binding consequence. That sort of a principle, of course, is familiar to lawyers in respect of the successive relations of courts, but it is equally true, not only in executive situations, but in everyday life, that when a tribunal, as, for example, in the taxing department, having original jurisdiction, is subject to review, certainly (and the authority who establishes the reviewing tribunal should be held conclusively to contemplate that) the determination on review shall be effective and binding upon the subordinate tribunal. Now, that is the situation as it has developed under this law.

[2] Speaking plainly, if this is not a system under which the local board, having original jurisdiction, may have its findings nullified through revision, or superseded through the exertions of a higher tribunal, having original jurisdiction of matters not within the competency of the local board to determine, the law amounts to nothing

other than a piece of legislation fraught with unlimited possibilities for confusion. Wherefore, courts ought to take that view of the law, and it brings us directly to the question: What is the attitude of the courts upon the determinations made by these functionaries created under this selective-service law? What is the power of the courts by way of revision or correction? Now, the answer to that question is not at all difficult. In my judgment, either as of first impression or based upon the course the courts have followed since the enactment of the law, it is simply this: That the courts are bound to respect the determination of any of these tribunals upon all matters within their jurisdiction, and that limits the court, at the outset, to determine and ascertain whether there has been action under the law; secondly, what is the quality and effect of that action in so far as it affects rights appertaining to the individual?

The court here, as many of the District Courts, has had applications for writs of habeas corpus seeking to review the action of local or district boards, challenging the propriety of their decisions, claiming that upon testimony in the record, or proffered testimony, a different determination should have resulted. It has been said with some uniformity, that the courts are barred the moment it appears that the tribunals had acted upon a matter properly before them. In a case brought to this court, where the petitioner, instead of proceeding by habeas corpus, sought to sue out a writ of certiorari commanding the boards to certify the records to this court to the end that it determine whether, upon the proffered proofs, petitioner made out a case entitling him to deferred classification, the court declined to take jurisdiction because, as it appeared to me, the boards had jurisdiction to determine what the petitioner himself said was determined; and in connection with that, this language was used as responsive to a contention made, supported by some authority, that the courts should issue writs of certiorari. I will quote from what was said at that time:

"Manifestly, cases dealing with individuals who aver that by reason of the express provisions of the Selective Service Act they are not within, but are left without, the entire scope of the act as prescribing and imposing liability to military service, are not pertinent. It may readily be conceded that, where the law imposes no obligation upon an individual, the courts must be open to his resistance of any effort to impose its obligations upon him. But the present case deals with an individual whose status is admittedly within the reach of the law. Indeed, he professes his willingness to submit to its obligations, but seeks for the time being to assert a right resting solely upon an executive regulation fixing and establishing conditions or considerations for classifications, and hence order and priority of call. With this as the case, should the courts exercise jurisdiction by certiorari to correct the misapplication of the executive regulations and to enforce, as the petitioner's right, the regulations as they may be applicable to the facts presented by him in court?

"Undoubtedly Congress, by detailed enactment, or the executive, with or without detailed regulation, could have imposed the service obligation upon all individuals within the scope of the law without any attempt to establish order or priority based upon considerations pertaining to the individual or to the service or the needs of the Nation. In other words, this power, existing as it did in Congress, might have been exercised and exerted by detailed provisions of the law, or might have been, as it was, delegated practically in its entirety to the executive. It is my view that the character of the legislation is such that it never was intended, by conferring upon the Executive the full

power and discretion to determine the matters which are now comprehended within the executive regulations, to reserve to the individual who is within the scope of the law, as a matter of legal right subject to be enforced and vindicated in the courts, these very regulations which, in executive discretion, need not have been made at all, or, in like discretion, may be varied from day to day. The draft boards are purely executive agencies, and their error, committed against those who are within the draft law, is executive error in the enforcement of discretionary regulations; and I do not believe that it was or could be the congressional intent that these executive agencies constituted, as observed, to carry out an unlimited discretion, were or are to be considered in the light of quasi judicial tribunals discharging functions which pertain to everyday legal rights of a citizen. In re Kitzerow (U. S. D. C. E. D. Wis.) 252 Fed. 865.

That is broad language, and I am ready to say to-day that I will adhere to all of it. But it does not reach this case, nor foreclose the petitioner's contention. Where, for example, the regulations indicate to the boards order and priority of call of registrants, or the considerations upon which order and priority shall be determined, namely, dependency or the like, it will be readily conceded that when the boards have determined the facts the courts should not take up the case and rebalance it, because that would lead practically to a judicial selective service ultimately. Every one within the range of the law could at least attempt to invoke the jurisdiction of courts for that sort of review. So we get back to the proposition. What is the function of the courts when inquiry is made on behalf of a citizen who seeks to prosecute a remedy which, if granted, will lead to his liberty? Plainly, the court is limited to asking the question, Have these boards acted; and if so, how? To what effect has the law been applied to the individual?

In my judgment the error made on behalf of the respondents in the discussion of the case arises right at this point, in asserting that this is to be regarded as a "military question." The questions to which I have referred, such as whether exemption or deferment should or should not be granted, are plainly executive questions. In fact, it makes little difference what characterization they be given, for their determination is binding upon the courts. But the questions whether the boards have acted at all, and, secondly, to what effect have they acted, are questions of fact, always open to judicial determination. It is the question whose answer determines whether the individual is, or must go, in or out of the service, and likewise whether he can or cannot invoke the court's aid. Now, the present case presents an approach from an angle opposite to that presented in the Kitzerow Case. There, the moment it appeared that the boards had acted, the court, having judicially determined that the boards had acted against the petitioner, said to him:

"We are bound by that determination and you must accept it as placing you in the service."

The petitioner here says that the boards have acted, but they have acted the other way. Now, if the premise be correct that until a man has been selected as the law prescribes he shall be selected, he retains his functions as a civilian, surely there must be a tribunal in which one who claims that he has not been drawn can establish that fact and enforce the rights growing out of it.

These boards exist in the manner in which I have indicated. The local board, up to the time its action was attempted to be superseded by the district board, was plainly within its jurisdiction. And that raises the question, presented naturally and of necessity by the petitioner, Did the district board have jurisdiction to make a superseding determination? Obviously, if the respondents come into court with an order of arrest, based solely upon the action of the local board, if the possession of a document of that kind is a bar to the exercise of judicial power, the writ here must be discharged; but, if the premise which I announce is correct, the petitioner is not bound by an order made by a board, which, under the very plain terms of the regulations and the obvious intent of the system to which I have adverted, has been superseded in its effect by the action of the other board, the district board. Therefore he has the right to come into court to test out the ultimate quality of the warrant which is returned here by the respondents as justifying his imprisonment.

[3] That brings us to the question as to whether the district board did have jurisdiction in this matter. I am ready to hold that it did, upon two grounds, one of which is easy: First, the practical concession of all parties here that there is nothing in law which forbade the district board originally to hear and determine this application for deferred classification at the time it in fact heard and determined it; secondly, jurisdiction appears entirely clear under the regulations issued by the Provost Marshal General and by the President. Under such regulations induction into service contemplated by the law is the point whereat the jurisdiction of these two boards ends, and, as such, is the time and hour fixed in the notice given by the local board. That regulation, of course, is supportive of the very idea to which I have adverted, namely, order, harmony, and effectiveness. It may be an interesting question, not relevant here, whether from and after that time, and prior to taking the oath as a soldier, the registrant is in fact a full-fledged soldier. But it is entirely clear that at no time, prior to the actual induction defined in the regulations, is the power of these boards within their respective jurisdictions to hear and determine matters pertaining to the case of a registrant wholly cut off. There is no statutory or other bar. Indeed, the regulations, wisely and in the interest of justice, seek to preserve and retain that power until the last moment. So I am ready to determine, both upon the concession and upon the record returned here, that there is nothing whatever in the law or the regulations which cuts off the power of the district board to exercise its original jurisdiction at any time prior to the induction which is defined in the regulation, namely, the hour specified in the notice of the local board. Notwithstanding some little contention respecting the exercise of jurisdiction informally, thereby ignoring regulations prescribing time within which a thing shall be done as a matter of practice or procedure, I consider it of no moment here. Such regulations are directory. The mere fact that the district board entertained this application prior to the time specified in the notice and made its determination prior to that time operated, in my judgment, under the very express terms of the regulations wholly to supersede the determination

of the local board. That really disposes of this case. I say that the petitioner can come in here and for the purpose of having a judicial determination of the question as to what this board or these boards had determined and what the quality of their determination is; can present the facts here, bringing in the action of the district board as the final arbiter of the matter of his going into or staying out of the service—at least for the time being.

[4] Now, what can be meant, the concession being made on behalf of the respondents that this district board had jurisdiction, by the general suggestion that the court is still barred from giving relief because it is a "military question"? It is not a determination of a "military question," because the intended consequences of the application of the law through this exclusive instrumentality leave the registrant where he was as a civilian. The affirmative action of the tribunal is against induction into service. Upon questions propounded during argument, it is interesting to inquire what the quality of the determination of the district board is, whether it was binding; and if so, upon whom. And in response to those queries it was said that it was binding until overridden by "higher military authority." Well, that answer is not availing for a variety of reasons, the first one being that it creates—it brings forth in the administration of the law—a situation fraught with nothing but confusion. The President and the executive, under the promptings of this very law, have determined that the district board should decide the matter, and it would be rather anomalous to say that a system had been created whereby the higher board could determine the matter, but the lower board need not in the slightest degree respect the finding, thereby forcing the one in whose favor it had been made to appeal to higher authority. But let us pass that for a minute and test it out in another way. Let us assume that the matter be characterized in that indefinite sort of a way as a military question, beyond the power of courts to consider. Notwithstanding that, it is conceded that the petitioner here, being between the boards and suffering the loss of his liberty unjustly, must have some sort of a recourse. Well, the query arises, What may that recourse be? And if the answer be that he might appeal to the Provost Marshal or to the President, let us grant that that might be done, let us assume that the local board having received the determination of the President to affirm the district board, the local board still remains obdurate, and respondents here, upon promptings of the local board, still refuse to release the petitioner. It is interesting to inquire, What remedy is left open to the President of the United States or the Provost Marshal to enforce their concurrence with the district board? What means or method would avail to relieve the petitioner of the aggressions? Would not the President insist upon according to petitioner the very right he now asserts—a civilian right based upon the award of the tribunal constituted for that very purpose? And obviously the asserted right, if subject to vindication, enjoyment, and protection at all, is so not as a matter of whim or caprice, but upon the formal pronouncement of a duly constituted instrumentality that the individual is for the time being not selected.

It seems absurd to say that, though reclassification or deferred

classification have been committed to the district board (exclusively in industrial cases), and their determination is and must be corrective of a status previously had under local board jurisdiction, nevertheless the district board's determination—binding on everybody—need not be respected by anybody. In the present case the local board has not attempted to justify its acts except upon the hypothesis that it could, optionally, ignore the action of the district board in its change of petitioner's status. There is no contention that his custody is based upon the deferred status. In this conflict it surely does not aid in the solution of the problem to say that the exertion of the local board's power as against the district board's conceded power to exempt him involves a "military question." And with this as the situation some power must exist to determine whether, under the law, the petitioner has or has not been drafted so as to bring about a surrender of his freedom as a civilian.

If a conflict between tribunals created under this law, howsoever ended or solved, would leave the individual whom it concerned a member of the military establishment, then it might be called, properly, a military question. But when it is conceded that the determination of the district board is effective, or intended to be effective as an executive release, discharge, or exemption, then the question, what in truth has been determined, certainly need not be given any special characterization. The answer to such question determines whether any right, subject to guaranty in enjoyment, has been conferred upon or retained by the individual. As already indicated, where such determination is intended to operate as exemption, the registrant is left—until superseded by the orderly processes of the law—in possession of his ordinary freedom, and, as also indicated, he should have recourse to judicial tribunals to relieve against an aggression in contravention of such exemption. This, of course, all proceeds upon the premise that in creating the "system" under this law, determinations of the executive tribunals are to be effective alike in the instances where they operate to reject or release the individual as in those where he is selected or actually called. In the one as in the other, courts accept the determination, refuse review, but, manifestly, in the former, cannot refuse to the individual such protection and guaranty in enjoyment of the right, as by the express force of the determination, the law intends should follow. Obviously, upon such view of what the "system" is and what it intends, habeas corpus must be the available remedy—the remedy which, if applied, may lead to a judgment enforceable not only through the strength of judicial but also of the supreme executive will. The suggestion that courts keep their hands off, to the end that "higher military authority" vindicate the personal right of the petitioner brings with it the query respecting remedies over and manner of guarantying the enjoyment of a conceded ordinary civil right. It may be conceded that a higher military authority could in the present case wrest the petitioner from the operation of the local board's order, but the mode and manner of enforcing obedience to the superior decree has not been suggested or defined.

I am satisfied that petitioner makes out a case entitling him to judgment of discharge, and such may be entered.