## UNITED STATES v. BUTTECALI.

### No. 5703.

District Court, S. D. Texas, Galveston Division.

Feb. 4, 1942.

Douglas W. McGregor, U. S. Dist. Atty., and William Eckhardt, III, Asst. U. S. Dist. Atty., both of Houston, Tex., for plaintiff.

Henry G. Howland, of Houston, Tex., and Tom S. Williams, of Sulphur Springs, Tex., for defendant.

ALLRED, District Judge.

Defendant is charged with violating 50 U.S.C.A. Appendix, § 311, by knowingly refusing, failing and neglecting to submit himself to induction into the armed forces of the United States on December 10, A.D., 1941. A jury was waived and after trial before the Court, he was found guilty on January 17, 1942. From then until January 22, 1942, the Court had under consideration the matter of sentence. On that date, Hon. Tom S. Williams appeared and asked leave to be allowed to appear as one of counsel for defendant, which was granted. At that time the Court read to counsel and defendant a tentative memorandum as follows:

"Defendant, now twenty-five years old, registered for Selective service October 16, 1940. At that time he claimed deferment under the Selective Training and Service Act as a minister because, he stated, he was conscientiously opposed, by reason of his religious training and belief, to 'combatant military service.' He failed to check the 'box' on his questionnaire stating that he was conscientiously opposed to 'non-combatant military service.' In his questionnaire he also claimed that his mother was dependent upon him for support.

"On July 18, 1941, defendant was classified by unanimous vote of the local board of Fort Bend County, in Class III-A (a registrant with dependents). He appealed this classification to the Board of Appeals on July 24, 1941. At the same time he filed a written notice claiming that his classification should be IV-D 'because I am an ordained minister and am a conscientious objector. I am a member of Jehovah's Witnesses and have been ordained as a minister in said Jehovah's Witnesses. * * * I am opposed to both combatant and non-combatant service.'

"On August 11, 1941, the Board of Appeals sustained the action of the local board and classified defendant in Class III-A by a vote of Five 'Ayes' and no 'Noes.' At the same time the chairman of the board of appeals wrote the local board of this action: 'We suggest that the status of this registrant be checked at regular intervals to be sure that he is actually supporting his mother and that if he should cease to subtantially contribute to her support, he should be re-classified in I-A.'

"On September 2, 1941, the local board notified defendant that his case had been reopened and that any evidence he wished the local board to consider should be submitted to it in writing before the 13th day of September, 1941, at which time the board 'intends to make a new determination of the registrant's classification.'

"On September 15, 1941, a notation was made on the 'Minutes of Other Actions' space in the questionnaire, 'Reclassified to I-A-O' (which is the classification for conscientious objectors assigned to non-com-

batant service). A line was drawn through this notation and the notation made over it on the same date, 'Removed from III-A—send to doctor—See affidavit of Nick Eppolito attached.' On the same date a notice, 'DSS 57 sent Registrant.'

"After receiving DSS 57 (which was sent out September 15, 1941), defendant personally talked with the appeal agent for the local board and expressed a desire to appeal to the President of the United States from the board's refusal to place him in Class IV-D. The appeal agent made out a form letter dated September 19, 1941, addressed to the Selective Service Board of Fort Bend County.[1] The appeal agent did not recommend that the registrant be deferred and defendant did not sign the letter or take any further steps in an effort to appeal to the President so far as the record shows.

"On September 30, 1941, the chief clerk of the local board wrote defendant, in the name of the board, as follows:

" 'I am in receipt of yours of no date concerning the refusal of this board to entertain a 2nd appeal of your classification.

'As I endeavored to explain to you in person when you visited this board you could not appeal to the President on your 3-A classification for the reason that you waited beyond the ten day period allowed after receiving your notice from the Board of Appeal and in addition the decision of the board of appeal was unanimous whereas you may appeal from their decision only if there is a dissenting vote or if the Appeal Agent requests that your case be reconsidered, whereas in this case the Appeal Agent refused to request the same.

'You were informed that you had been placed in I-A-O, but such was a mistake, and now you are in no class at all. The Board saw fit after due notice to you to remove you from class 3-A, but you have not been reclassified and hence cannot appeal from the classification for you are in no class, and you will not be put in a class until after your physical examination. After your physical examination you will be classed and at such time you may appeal if you so desire.'

"On November 18, 1941, pursuant to order, defendant appeared for physical examination. On November 25th he was reclassed by the local board in Class I-A-O (Conscientious objectors for non-combatant service) by a vote of two 'Ayes' and no 'Noes.' On the same date he was notified of this reclassification and given written order to appear for induction on December 10, 1941.

"Shortly after receiving these notices defendant talked in person with the Fort Bend County appeal agent with reference to his continued desire to appeal to the President of the United States from the action of the local board, and the board of appeals in refusing to recognize his claimed exemption as a minister and to place him in Class IV-D. The Government's appeal agent told defendant that he had lost his right to appeal from the action of the board of appeals, which had refused the minister classification in August, but that he had the right to appeal from the new classification, I-A-O, to the board of appeals. In the conversation defendant and his attorney learned the name and location of the board of appeals in Houston. Together they went to Houston and talked with the clerk of the board of appeals.

"Defendant showed this clerk his I-A-O classification card and asked if there was

---

[1] "The main body of the letter read as follows:

" 'I desire to appeal to the President of the United States from the classification given me and from the refusal to place me in Class 4-D. You originally gave me Class 3-A, from which an appeal was taken to the Board of Appeals for this district, which board sustained your action. You subsequently placed me in Class 1-A-O, according to your notice dated September 15, 1941.

'I am a minister of the gospel of Jehovah Witnesses, regularly ordained more than three years ago and have for each week during said period gone from house to house interviewing the occupants and playing to them phonograph records concerning God's Kingdom and His Purpose, and distributing religious literature, all of which is more particularly shown by my statement attached to my Questionnaire.

'I earnestly contend that I should be placed in Class 4-D and do desire the President of the United States to review the determination of the Board of Appeal. You are requested to permit me to sign the notice of appeal on my questionnaire and that you take all steps necessary and required by law in reference to this appeal.

'My name, serial number and order number appear above. My residence is 1604 Goliad St., Houston, Texas. My age is 25 years.'

anything he could do, stating that he was opposed to both combatant and non-combatant service. He also told her he still wanted the IV-D ministerial classification. The clerk told defendant that the board had already passed on that, so they couldn't pass on the IV-D classification again; that if he wanted to appeal for the IV-E classification (conscientious objectors opposed to both combatant and non-combatant service, but certified for civilian work of national importance), he could appeal on those grounds.

"Defendant and his attorney then talked with the chairman of the board, who told them that it was against the rules for registrants to appear in person under such circumstances before the board. Defendant's attorney persisted in discussing the matter, and the chairman advised them that defendant could appeal to the board of appeals from the new classification, I-A-O, on the ground of being a conscientious objector, opposed to non-combatant service, if he desired to do so. The chairman also told the attorney that defendant might be able to get his claimed exemption as a minister reviewed by the President if the State Director of Selective Service, General J. Watt Page, would appeal the case.

"What the chairman told defendant and his attorney was perfectly clear and a mere suggestion, seeking to enlighten them as to some practicable way in which they might be able to get the case reviewed by the President. My conclusion is, however, that they got the idea that by simply giving notice of appeal to General Page, the State Director of Selective Service, that automatically perfected an appeal to the President on the claimed exemption as a minister. Indeed they seemed to have this idea upon the trial and are still laboring under that impression although the Court sought several times to remove it.

"With this in mind defendant and his attorney returned to Richmond prior to December 10th, and again talked with the appeal agent. The conversation between the appeal agent and defendant's attorney became quite heated, but the appeal agent again told them that defendant had a right to appeal to the board of appeals from the I-A-O classification upon the ground of being a conscientious objector opposed not only to combatant but non-combatant service as well. Upon the insistence of defendant's attorney the appeal agent gave them a copy of the letter of September 19, 1941, set out in Footnote (1) above. Defendant then signed a copy of this letter and mailed it by registered mail to General Page at Austin, Texas. Nothing has ever been heard from it. It was defendant's attorney's way of perfecting an appeal to the President, although the Selective Service regulations do not authorize such procedure.

"Defendant did not at any time within ten days after receiving the notice of his reclassification in Class I-A-O, or within ten days after receiving order to report for induction, perfect an appeal to the board of appeals. The evidence clearly shows that defendant and his attorney were content to stand upon the effort to get an appeal heard by the President through the State Director, and did not concern themselves with even attempting to again appeal to the board of appeals. That they knew they had this right is quite clear. That they knew how to appeal to the board is equally clear, for defendant had once before perfected such an appeal.

"Defendant testified upon the trial that for more than three years prior to registration he had been a 'minister of the Jehovah's Witnesses sect or denomination.' He claimed to have been formally ordained three years before registration by the 'Watch Tower Bible & Tract Society,' 117 Adams, Brooklyn, New York. He presented a printed card signed by J. F. Rutherford, President of the Watch Tower Bible & Tract Society, as evidence of his ministerial capacity.[2] His signature appears in

2 "Reading as follows:

" 'To Whom It May Concern: This is to certify that P. Buttecali, whose signature appears below, is an ordained minister of Jehovah God to preach the gospel of God's kingdom under Christ Jesus and is therefore one of Jehovah's witnesses; that he is sent forth by this Society, which is created and organized and chartered by law to preach the gospel of God's kingdom, and that Jehovah's witnesses are commanded to obey God by preaching the gospel, which commandments appear in the Bible at Isaiah 61:1, 2; Isaiah 43:9–12; Matthew 10:7, 12; Matthew 24:14; Acts 20:-20; 1 Peter 2:21, and 1 Corinthians 9:16; and that Jehovah's witnesses are compelled to obey God rather than men. (Acts 3:23; Acts 4:19; and Acts 5:29)

" 'That in obedience to God's commandments Jehovah's witnesses preach the gospel and worship almighty God by

fresh blue ink on the bottom, giving an address in Houston, whereas at the time of his registration he lived in Stafford, in Fort Bend County.

"Defendant testified upon the trial that he was and had been for several years conscientiously opposed to combatant and non-combatant service. He first stated emphatically that he would not even perform work of national importance under civilian direction. After the Court had informed him, however, that he had lost his right to appeal the ministerial classification, he said that he now desired, if possible, to appeal from the local board's 1-A-O classification and ask for a classification of IV-E. He would not, however, agree to perform work of national importance under civilian direction even if he were given a IV-E classification. This attitude on defendant's part probably accounts for his failure to perfect an appeal to the board of appeals from the local board's classification of I-A-O.[3] At that time he was not only opposed to both combatant and non-combatant service, but to civilian work of national importance as well. To use his own words, he just wants to be let alone. He has not yet agreed, even if he were granted appeal as a conscientious objector, to perform civilian work of national importance if his claim should be duly allowed upon appeal. To the contrary, he seemingly wants to be the judge as to whether such work might possibly indirectly aid in national defense; hence, in his present frame of mind, the allowance of an appeal looking to his being classified in IV-E, even if permitted by the local board, would not assist him. Unless he changes his attitude it would but defer the day of sentence.

"No evidence was offered or presented that either the local board or the board of appeals abused the discretion imposed upon them under the Selective Service Act and regulations. Certainly this Court has no right to review the findings of the board in the absence of abuse of discretion or violation of the law. The only attack made upon the board's action was defendant's own testimony, the card signed by Rutherford, and two or more witnesses to the effect that he had been a faithful member of the sect for about three years. I do not know what evidence to the contrary may have been before the board.

"If defendant is willing to assure the Court that he will perform civilian work of national importance if given that classification, the Court is inclined to be lenient with him and will even request the local board to permit him to appeal to the appeal board for a IV-E classification; provided that if after such appeal is perfected, his claim should be sustained, he will agree to perform civilian work of national importance under such IV-E classification.

"The Court does not know whether the local board would permit defendant to appeal under such circumstances, but his bona fide willingness to serve under the IV-E classification, if it should be granted, will certainly effect the punishment whether the board permits the appeal, or not.

"Defendant will be given until Tuesday, January 27, 1942, at 2:00 P. M., to determine his course and to make any statement he desires as to why sentence should not be pronounced upon him."

After having read the foregoing tentative memorandum to defendant and his attorneys, the newly associated counsel urged the right of defendant to attack the refusal of the local board and the appeal board to grant defendant's claim to deferment as a minister; and asked the Court to reopen the case for the purpose of hearing testimony. The Court took this under advisement until Tuesday, January 27, 1942, at which time

---

calling upon the people at their homes and exhibiting to them the message of said gospel in printed form, such as the Bible, books, booklets and magazines, and thus afford the people the opportunity of learning of God's gracious provision for them.

" 'That said witness of Jehovah is doing this work of bearing testimony before the people in strict accord with the fundamental law of the land and in obedience to God's law, which is supreme. Any kindness and consideration shown this witness of Jehovah will be greatly appreciated and is certain to call forth the blessing of the Lord upon the one showing such kindness. (Matthew 25:31–46).

" 'Watch Tower Bible & Tract Society.

" 'J. F. Rutherford, president.' "

3 "The board of appeals did not have a right to consider a claim of conscientious objector upon the original appeal (which was based upon a claimed ministerial exemption) because, under Rule 363, of the Selective Service Act, when the local board placed defendant in Class III-A, the claim of conscientious objector, even if he had made one, could not be considered.

he granted defendant's motion to reopen the case for the purpose of permitting him to show that either board had not given him a hearing or had refused to give him a fair hearing.

The evidence wholly failed to make such showing. Defendant admitted that he had been given a hearing by the local board; that he was told he might tender additional witnesses or affidavits; and that he failed to do so. The chairman of the board was recalled as a witness and testified that the board gave due consideration to defendant's claim to deferment, to his oral statements and the written evidence presented to the board. The chairman could not recall all that the defendant said in his oral statement, but testified that its substance was reduced to writing and transmitted to the appeal board.

■ While administrative findings cannot ordinarily be disturbed, the arbitrary denial of a fair hearing amounts to no hearing at all and, under such circumstances, may be set aside by the courts, Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369. The first question to be determined is whether a fair opportunity was given for hearing. If it was, the case can proceed no further; and the denial of a hearing cannot be established by proving that the decision was wrong. It cannot be established simply by showing that the board did not accept certain sworn statements as true, even though no contrary or impeaching testimony was introduced, Chin Yow v. United States, supra; Franke v. Murray, 8 Cir., 248 F. 865, L.R.A.1918E, 1015. Where there was any evidence at all to support the decision of the local board, the courts are without jurisdiction to review a classification, Shimola v. Local Draft Board, D.C. Ohio, 40 F.Supp. 808; Petition of Soberman, D.C.N.Y., 37 F.Supp. 522; Angelus v. Sullivan, 2 Cir., 246 F. 54; United States ex rel. Roman v. Rauch et al., D.C.N.Y., 253 F. 814; Bonifaci v. Thompson et al., D.C.Wash., 252 F. 878; In re Kitzerow, D.C.Wis., 252 F. 865; Brown v. Spelman, D.C.N.Y., 254 F. 215.

■ As stated above, defendant wholly failed to discharge the burden placed upon him that he was not accorded a fair hearing. While the Court had no right, under these circumstances, to review the action of the board, yet a wide latitude was given defendant in the introduction of evidence.

■ While the Court's findings add nothing to the action of the board, defendant's own testimony shows that the board's refusal to classify him as a minister was eminently correct. He was brought up by a Catholic mother, and some three or four years ago became interested in the Jehovah's Witnesses sect. He was baptized. He was ordained, a process which seems to consist largely of a conviction in one's own mind that he is called to do God's will and has dedicated himself to that service. He is then given a card like the one set out in Footnote (2), supra. This permits him to go out with periodical literature, for which he pays 20¢ a copy and receives in return contributions of 25¢. He also takes a phonograph and plays records on it.

Although defendant testified that he had engaged in this work for several years he was only able to name one place where he had played a phonograph. The record of his ministerial duties, kept by the secretary of the local organization, showed that he only put in a few hours each year in accepting contributions for the magazines. These hours increased noticeably since the matter of changing his classification came up. Incidentally the secretary of the local sect testified that the number of ministers generally had increased by an unusual percentage during the same period of time.

Defendant admitted that he went about his work as a blacksmith and later as a carpenter. He failed to mention to any of his fellow workmen that he was a minister or, indeed, that he was of the deep religious conviction which he professed upon the trial.

After having heard the additional evidence tendered upon reopening of the case the Court was more firmly of the opinion that the evidence showed defendant's guilt beyond a reasonable doubt. The verdict of guilty was accordingly entered.

Defendant seemed to have gained determination in the meantime and wholly failed to indicate to the Court that he would accept work of national importance under civilian direction if the local board waived the ten days' notice and authorized an appeal. Under these circumstances, nothing could possibly be gained by requesting such action of the local board. At the last hearing the defendant seemed determined to stand upon his claimed deferment as a minister, and seemingly courted punishment with the air of a martyr. In fact he re-

peatedly said he expected to be persecuted for his convictions.

The Court attempted at all times to be patient with the defendant, urging him to agree to perform civilian work of national importance. He would not do so.

■ Under the circumstances, after reflection, the Court accordingly sentenced the defendant to two years' imprisonment in an institution to be designated by the Attorney General of the United States.

This memorandum is entered in order to clarify the record.