## In re LACHARITY.

### Civ. No. 1564.

District Court, W. D. New York.

Dec. 7, 1943.

48

Klocke & Rovner, of Buffalo (James O. Moore, of Buffalo, of counsel), for petitioner.

George L. Grobe, U. S. Atty., and by Eugene J. Donnelly, Asst. U. S. Atty., both of Buffalo, for respondent.

KNIGHT, District Judge.

Petitioner registered under the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 301 et seq., with Local Board 3, Lancaster, Pennsylvania, and was classified III-A on December 11, 1940, on dependency of two daughters not residing with him.

He stated his wages as $75 per week, or $3600 (sic) per year in his questionnaire. He executed an affidavit (D.S.S. form 41) covering dependency, stating his income as $2000 per year and that his daughters lived at his home part of the year, and further that his mother was dependent partially upon him.

On February 8, 1943, petitioner was re-classified tentative 1 and mailed notification by the proper form (D.S.S. 57). On March 1, 1943, he was classified IA by the Board and so notified by mail on D.S.S. Form 57. Entered under the same date (whether before or after reclassification does not affirmatively appear) the Classification Record of the Board bears an entry that petitioner was granted an appearance before the Board. A memorandum in the Local Board's file on petitioner recites his appearance before the Board on March 1, 1943, concerning dependency of his children.

On March 6, 1943, apparently at the behest of petitioner, the Board secured permission to afford petitioner a pre-induction physical examination, because he could not liquidate his business in seven days.

By letter, dated March 19, 1943, petitioner sent two affidavits to the Board, his own claiming his father and mother as collateral dependents and that one of his daughters had returned to live with him and had become a full dependent on March 7, 1943; and further claiming an occupational deferment. His daughter's affidavit was in support.

A memorandum, dated March 22, 1943, and signed with name of a Board member recites that petitioner's second marriage "occurred after registration and dependency of daughter after Pearl Harbor, no undue hardship because daughter could live with her step-mother." The Board by letter dated March 23, 1943, notified the petitioner that he would have to go through induction.

A memorandum dated March 25, 1943, in the file recites that petitioner phoned and requested that his examination papers be sent to him in Buffalo, that he would like to go direct to Harrisburg for a pre-induction examination. The examination papers were sent to petitioner but petitioner never availed himself of the courtesy. Petitioner submitted affidavits supplementing his claim to occupational deferment and also filed an Affidavit for Occupational Classification (form 42A) in support, in which he stated inter alia that his salary was $100 per week. These were sent by letter dated April 8, 1943, stating his knowledge that the Board would meet on April 12 requesting reconsideration and further reciting that "I intend to call on you then."

At the meeting on April 12, 1943, petitioner and his attorney were present and testimony under oath was taken and minutes made. The minutes recite that deferment was denied on either ground—dependency or occupation, and by letter dated April 13, 1943, petitioner was notified that his I-A classification was continued. By letter dated April 16, 1943, petitioner purported to appeal from this decision and further requested that his case be referred to the Appeal Board located in Buffalo, New York, pursuant to Section 627.71 of the Regulations, claiming that the Buffalo Appeal Board has jurisdiction over the area in which he was employed.

By letter dated April 20, 1943, the Board notified him that he was classified I-A on March 1, 1943, and failed to appeal within the prescribed 10 days and that "the Board agreed to hear you at its meeting held Monday, April 12, 1943, and notified you that your classification remained I-A, * * *" and further, refused to transfer the case to the Buffalo Appeal Board.

Petitioner was ordered and appeared for induction in Buffalo, New York, on May 17, 1943, and was rejected. The report of his physical examination and induction (D.S.S. form 221) recites disqualification because of "Limitation of quota for limited service men for the month of May. He may be sent in with next group."

A letter dated May 26, 1943, shows that the Board forwarded the petitioner's induction papers to a local Board in Buffalo, New York, for a second induction and further recites: "We have referred to memorandum of April 24th, 1943, and even though it states that registrants rejected at the induction station should be classified 4F, we want him to be forwarded to the induction station as according to the papers received from this station. * * *"

A Second Report of Physical Examination and Induction D.D.S. form 221 shows that he was again sent for induction on July 12, 1943, and rejected because of the quota for limited service men. An entry by the local Board on this form recites petitioner's classification of I-A(L) on August 23, 1943. Petitioner's questionnaire bears an entry under caption "Minutes of Other Actions" as follows: "8-23-43 Classified I-A(L) Vote 3 to 0. Rej. at Albany. Form 57 mailed 8-23-43 Robert F. Groff."

By letter dated August 10, 1943, the local Board forwarded the file to the Pennsylvania Selective Service Headquarters for review and a letter dated August 19, 1943, from the State Director shows that the file was reviewed and recommended that proper classification was I-A(L).

Petitioner's letter to the Board dated August 31, 1943, purports to appeal on same grounds from the last classification and also requests transferral of case to the Buffalo, New York, Appeal Board. The Board refused to permit this appeal on the ground that class I-A(L) is a continuation of classification I-A and not a re-classification.

Petitioner was inducted into the army on October 20, 1943, and on October 25, 1943, was classified I-C (in the armed forces).

From the record before the court it is apparent that petitioner is the owner and operator of a chain of hotels, a person of comprehension and intelligence. No question exists in this case of the registrant having lost any rights through inherent ignorance or lack of reasoning.

Petitioner maintains that his induction was illegal on the following grounds:

(1) That he was afforded a formal appearance by the Board on April 12, 1943, but was not permitted to appeal thereafter pursuant to sections 625.1 and 625.2 of the Regulations.

(2) The Lancaster Board refused to transfer his file to the Buffalo, New York, Appeal Board which has jurisdiction over the area in which petitioner is employed.

(3) The Board failed to classify him IV-F following his rejection at the induction station on May 17, and again on July 12, 1943.

Sections 625.1 and 625.2 of the Selective Service Regulations provide in substance for the right in every registrant to an appearance before a local Board after classification, if he files a written request therefor within 10 days after the local Board has mailed a notice of Classification (form 57) to him. Section 625.2 requires the fact of the registrant's appearance to be entered in the Classification Record (form 100) and that the Board shall thereafter "again classify the registrant in the same manner as if he had never before been classified," and mail him notice on the Notice of Classification (form 57), and further that this shall be followed by the same right of appeal as in the case of an original Classification.

From an examination into the intent and purpose of these sections relating to an appearance it is clear that it was the aim of the regulations to provide that every registrant be entitled to one formal appearance as of right before the Board after a change in classification by the Board. Demand for this formal appearance is to be made in writing, but this requirement, under familiar rules of law, may be waived by both the registrant and the Board. Limitation of the right to an "appearance" to 10 days after a re-classification except after a classification itself determined upon an "appearance" shows that the intent and purpose of the regulations are to afford one "appearance" only as of right. Any other construction would result in giving the registrant endless opportunity to avoid induction.

It is further noted that the Board in its discretion may grant the registrant a second or further appearance and re-open his case. This latter power is analogous to the power of a court to grant a new trial.

Petitioner had his formal appearance as of right on March 1, 1943. He then presented himself to the Board, minutes were taken of the proceedings, and his testimony was reduced to writing; an entry of the hearing date, time and his presence were made in the Classification Record, and a notice of Classification (form 57) was mailed to him stating in print his right to appeal.

Did the Board on April 12, 1943, grant him another "appearance" and re-open his case? An inspection of the evidence proffered does not show any new matters which were not known to petitioner on or before March 1, 1943, but it is obvious that the affidavits submitted and testimony taken set forth facts that were known to petitioner before March 1, 1943, and no excuse is offered why they were not then presented. Petitioner never requested a formal appearance on April 12, 1943, and the Board never treated it as an "appearance", and made no entry on the "Classification Record." No form 57 was mailed. Under these circumstances, bearing in mind the intent and purpose of the regulations, it is obvious that the hearing granted petitioner on April 12, 1943, was not a formal "appearance", but rather a hearing granted by the Board to enable petitioner a presentation of his case to them to persuade them to re-open his classification.

This they then declined to do as was fully within their power. See United States ex rel. Filomio v. Powell, D.C., 38 F.Supp. 183.

Petitioner's attempts to appeal were, therefore, not timely, his appeal rights were waived, and his request that his appeal be transferred to the Buffalo Appeal Board was moot. No prejudice to or deprivation of petitioner's legal rights thus appears in the proceedings to this point.

Proceeding to the final contention of petitioner, if the Board wrongfully failed to reclassify him 4-F after his administrative rejection in May and July, did this deprive him of a substantial right or prejudice him. A memorandum dated April 26, 1943, whose inspiration is the War Department and whose origin is the National Director of Selective Service but which was sent out as a release from each state headquarters is as follows:

"The War Department—directed that no limited service men would be accepted for the remainder of the month of April. They have now notified this headquarters that during the month of May * * * only 5% of those inducted on any one day may be limited service.

"Efforts are being made to establish uniform and permanent physical standards but until such time as the matter has been clarified all registrants rejected at the induction station should be classified in IV-F."

On July 26, 1943, this was cancelled and a new directive issued as follows:

"I The War Department has issued the following instructions to the armed Forces Induction Stations in regard to the induction of limited service men.

"1. Present instructions authorize the induction of registrants qualified for limited service only, at a rate of not to exceed 5% of the total number accepted * * * at each induction station on each day. This system has resulted in acceptance of such men other than in accordance with their * * * order numbers, and has also resulted in the forwarding of individual registrants to induction stations 2 or more times before acceptance.

"2. To eliminate this condition * * * effective August 1, 1943:

"(a) * * * no registrant found acceptable for limited service only, will be accepted for induction unless he has previously been examined by the * * * In-

duction Station and found acceptable for limited service * * *

"II * * *

"The local boards shall reopen the classification and reclassify all registrants who have heretofore been found acceptable at the induction station for limited service only but administratively rejected as in excess of the quota, and who, upon their return to the local boards, have been reclassified in Class IV-F. After such reopening any registrant again classified in Class I-A shall have the letter 'L' added after his classification."

(Also further provision that any registrant reclassified from IV-F shall have right to hearing, appeal, etc.)

It is noted from an examination and comparison of the two directives, that there may be some merit to petitioner's contention that the Local Board should have reclassified him in Class IV-F, in properly following the directive of April 26, 1943. Mere errors of the board, however, alone are insufficient to give rise to a presumption that petitioner is being unlawfully deprived of his liberty. On examination into the scope and purpose of the directive of April 26, 1943, it is believed that the ruling is incidental to a proposed lowering of the number of men accepted for limited service—the purpose of the directive being administrative and procedural to avoid sending and resending the same men to the induction station at successive quota calls, and having them continually rejected as the 5% daily quota is filled. The only apparent protection set up for the registrant in the directive is the proposed avoidance of successive returns to the induction station. Certainly it is apparent that a registrant acceptable for limited service had no right to be placed in Class IV-F which is set up in the regulations for those who: " * * * after physical examination by the armed forces is found to be physically or mentally unfit for any military service." Regulations, Sec. 622.62. All the petitioner's rejections certified him as available for limited service on receipt of quotas and none were disqualifying.

 In so far as it authorizes the placement of an acceptable registrant in a class denominating utter disqualification, it may be contended that the directive of April 26th is in excess of and in contravention of the congressional mandate. Sufficient it is to say that the petitioner here-

in has been deprived of no substantial rights by the Board's failure to re-classify him into Class IV-F after his rejection in May. Certainly the Board's action in adding (L) to his I-A classification on August 23, 1943, after his rejection on July 12, 1943, was properly in accord with the directive taking effect August 1, 1943. Procedural errors not prejudicial to substantial rights are not such errors as to render an induction improper. See . United States ex rel. Bergdoll v. Drum, 2 Cir., 1939, 107 F.2d 897, 129 A.L.R. 1165; Ex parte McDonald, D.C., 253 F. 99.

The foregoing when considered with the fact that petitioner was granted an appearance and knew of his appeal rights and allowed the time to expire without availing himself of them does not put him in a favorable light in his claim that the Board's later action had an incidental effect of not permitting him another chance of appeal.

Let the writ be quashed and an order be prepared accordingly.